### CIVIL AERONAUTICS BOARD et al. v. MODERN AIR TRANSPORT, Inc.

No. 97, Docket 21473.

United States Court of Appeals Second Circuit.

Argued Dec. 13, 1949.

Decided Jan. 6, 1950.

Jacob Freed Adelman, of New York City (Morris A. Schoenfeld, of New York City, and Charles S. Rhyne, of Washington, D. C., on the brief), for defendant-appellant.

Robert Burstein, Atty., Civil Aeronautics Board, Washington, D. C. (William J. Hickey and James E. Kilday, Sp. Assts. to Atty. Gen., Gilbert E. Andrews, Atty., Civil Aeronautics Board, Herbert A. Bergson, Asst. Atty. Gen., Oliver Carter, Chief, Office of Enforcement, Civil Aeronautics Board, Dent D. Dalby, Chief, Enforcement & Litigation Div., Civil Aeronautics Administration, Washington, D. C., and Irving H. Saypol, U. S. Atty., and David McKibbin, Asst. U. S. Atty., both of New York City, on the brief), for plaintiffs-appellees.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from an order granting the Civil Aeronautics Board a preliminary injunction restraining defendant, Modern Air Transport, Inc., from engaging in air transportation in violation of § 401(a) of the Civil Aeronautics Act of 1938, as amended, 49 U.S.C.A. § 481(a), and from carrying on certain activities as an air carrier without proper authorization by the Board.[1] Defendant has been authorized to engage in air transportation by a Letter of Registration as an Irregular Air Carrier issued it in 1947 under § 292.1 of the Economic Regulations of the Board. This action was brought because, as plaintiffs al-

---

1. The Administrator of Civil Aeronautics appeared as a party plaintiff; and certain allegations of the complaint asserted that defendant violated § 610 (a) (4) of the Act, 49 U.S.C.A. § 560 (a) (4), by operating as an air carrier without an appropriate air-carrier operating certificate issued by the Administrator. Since the order under appeal makes no reference to this phase of the case, it is not involved in this appeal.

leged and the district court found, D.C.S.D. N.Y., 81 F.Supp. 803, the flights of defendant's aircraft exceeded in frequency and regularity those permitted by the terms of this Regulation. Airlines registered under the Regulation are exempted from the prohibition of § 401(a) of the Act against an air carrier engaging in air transportation unless there is in force a certificate of public convenience and necessity issued by the Board, authorizing it to engage in such air transportation. The purpose of this action is to treat defendant's activities beyond the scope of the permission as entirely unauthorized, while defendant contends that there must first be Board action revoking the permission before an appeal can be made to the courts.

It is not disputed here—as, indeed, it could hardly be on the evidence—that defendant operated flights regularly between New York, N. Y., and San Juan, P. R., three or four times each week on Monday, Wednesday, Friday, and Saturday. It is perfectly clear, therefore, as will be pointed out in more detail below, that such regularity and frequency of operations are enough to bar defendant from being classified as an Irregular Air Carrier and to require it to have a certificate of public convenience and necessity. This affords the basis for the Board's contention that, by providing service in excess of that authorized by its registration as an Irregular Air Carrier, defendant loses the benefit of the exemption from § 401(a) provided by the cited Regulation under the authority of § 416(b) of the Act, 49 U.S.C.A. § 496(b), and that it is violating § 401(a) by offering air transportation without a certificate of public convenience and necessity. The injunction was granted under § 1007(a) of the Act, 49 U.S.C.A. § 647(a), which gives jurisdiction to the district courts to enjoin violation of § 401(a).

Defendant's attack upon the granting of the preliminary injunction is therefore not on the facts, but on jurisdictional grounds. It earnestly contends that so long as its letter of registration as an Irregular Air Carrier has not been suspended, its exemption from § 401(a) is absolute and complete, and that the court has no jurisdiction to enjoin its unauthorized regular service until the Board has first proceeded to take action to suspend or revoke the letter of registration. Its chief reliance is upon what has come to be known as the doctrine of primary administrative jurisdiction, although it does make at least a passing reference to the well-known rule forbidding resort to the courts by litigants before they have exhausted all administrative remedies.

We shall not pause long upon the latter point, not merely because of the greater importance here of the other, but also because it seems to us clear that it serves only to prevent private litigants from attempting to oust administrative bodies from the exercise of adjudication properly committed to them and does not operate to limit the public agencies themselves from fulfilling the duties placed upon them by law. Moreover, whatever there may be of policy in favor of prior administrative action which should be held applicable to the agencies themselves, it is more aptly and pointedly expressed by the other doctrine relied upon, that of primary administrative jurisdiction.

Under this doctrine the courts will not determine a question within the jurisdiction of an administrative tribunal prior to the decision of the tribunal where the question demands the exercise of administrative discretion requiring the special knowledge and experience of the administrative tribunal. 42 Am.Jur. 698–702. This self-denying doctrine has been used by the courts as a ground for refusing to decide the difficult issues of reasonableness of a rate or fairness of a regulation which fall within the area of special competence of the particular administrative agency and for which the agency is said to have primary jurisdiction. 51 Harv.L.Rev. 1251. But this doctrine is not applicable where the issue, regardless of its complexity, is not the reasonableness of the rate or rule, but a violation of such rate or rule. Thus it has been continuously asserted that courts have original jurisdiction to interpret tariffs, rules, and practices where the issue is one of violation, rather than reasonableness. W. P. Brown & Sons Lumber Co. v. Louisville & N. R. Co., 299 U.S. 393, 57

S.Ct. 265, 81 L.Ed. 301; Texas & P. R. Co. v. Gulf, C. & S. F. R. Co., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578; Burrus Mill & Elevator Co. of Oklahoma v. Chicago, R. I. & P. R. Co., 10 Cir., 131 F.2d 532, certiorari denied 318 U.S. 773, 63 S.Ct. 770, 87 L.Ed. 1143. The distinction has come to be thoroughly recognized in the decisions first involving the Interstate Commerce Commission and now given general application, cf. Rochester Tel. Corp. v. United States, 307 U.S. 125, 139, note 22, 59 S.Ct. 754, 83 L.Ed. 1147; it is well brought out by the discussions of Justice White applying the doctrine to the question of discriminatory and unreasonable rates in Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075, and Justice Brandeis declining to apply it to the question of an interstate tariff in Great Northern R. Co. v. Merchants' Elevator Co., 259 U.S. 285, 289, 42 S.Ct. 477, 66 L.Ed. 943. Thus the outstanding feature of the doctrine is properly said to be its flexibility permitting the courts to make a workable allocation of business between themselves and the agencies. McAllister, Statutory Roads to Review of Federal Administrative Orders, 28 Calif.L.Rev. 129, 143, 147; 30 Geo.L.J. 545; 42 Am.Jur. 700.

Our present case is one involving the violation of a lawful regulation of the Board, rather than one requiring expert appraisal of the reasonableness of a company action. The Board, within the authority given it by the Act, has granted an exemption for noncertified carriers and has set out the standards with which the carrier must comply in order to enjoy the exemption. In its Explanatory Statement accompanying § 292.1 of the Economic Regulations, the Board pointed to its order in Matter of the Non-Certified Operations of Trans-Caribbean Air Cargo Lines, Inc., C. A. B. Docket No. 2593, Order Serial No. E-370, March 14, 1947, as containing the criteria which must be met if operations are to be considered irregular. These are that (1) flights between designated points, whether one or more per week, must be staggered as to the days of the week in successive weeks; (2) if more than one such flight is to be operated per week in successive weeks, not only must such flights vary as to the days of the week, but there must also be breaks in continuity of service for a week or approximately that period during which no flights are operated between these same points; and (3) the flights must be of such infrequency as to preclude any implication of a uniform pattern or normal consistency of operations between the same two points.

■ Unless we deliberately shut our eyes to the criteria thus so clearly stated by the Board, we can have no question but that defendant has been giving service which is not irregular, and which is thus not authorized by its letter of registration as an Irregular Air Carrier. In the findings accompanying § 292.1 the Board stated that since 1938 there had existed "an exemption regulation adopted by the Board which exempts noncertificated air carriers * * * so long as they engage only in irregular services as defined in such regulation." And § 292.1(b) itself provides that "no air carrier shall be deemed to be an Irregular Air Carrier unless the air transportation services offered and performed by it are of such infrequency as to preclude an implication of a uniform pattern or normal consistency of operation between, or within, such designated points." Since defendant has been offering regular service it is no longer to be deemed an Irregular Air Carrier, the exemption of § 292.1 no longer exists, and it is automatically subject to § 401(a) of the Act. The district court thus had jurisdiction to enjoin defendant's violation of the Act under § 1007(a).

■ It is of course true that the distinction set by the Supreme Court may afford difficulties in a borderline case. It is also true that even the question of violation of a regulation may be difficult, though we do not understand that there is anything in the doctrine which excuses a court from deciding a question of violation because it may be difficult. But the value of the distinction as established is shown in a case such as this where there can be no doubt of the violation and a re-reference to the Board to decide whether it was correct in seeking an injunction under the statute can be only a delaying formalism peculiarly un-

desirable in the application of the vital controls needed for aircraft. We express no opinion as to the jurisdiction of the district court to issue an injunction at the suit of a private party. Such jurisdiction has been denied in Trans-Pacific Airlines, Ltd., v. Hawaiian Airlines, Ltd., 9 Cir., 174 F.2d 63, and American Airlines, Inc., v. Standard Air Lines, Inc., D.C.S.D.N.Y., 80 F.Supp. 135, though cf. Pacific Northern Airlines v. Alaska Airlines, D.C.Alaska, 80 F.Supp. 592. There the court may well show an understandable reluctance to control the activities of an air carrier without action by the agency entrusted with its regulation. But where, as here, the Board is the petitioner seeking restraint of a violation of law, we find no judicial barrier to granting the swift remedy accorded it by Congress.

Affirmed.